Filed 5/23/17; pub. order 6/9/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THEODORE LAYMON et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>J. ROCKCLIFF, INC., et al.,<br><br>    Defendants and Appellants. | A147464<br><br>(Contra Costa County<br>Super. Ct. No. MSC 15-00186) |
| GEORGE HERNANDEZ et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>MASON-MCDUFFIE REAL ESTATE, INC., et al.,<br><br>    Defendants and Appellants. | A147469<br><br>(Contra Costa County<br>Super. Ct. No. MSC 15-01148) |

The plaintiffs in these consolidated appeals filed suit against the brokers who represented them in the sale of their homes and a group of companies that provided services in connection with those sales. Plaintiffs contend defendants violated their fiduciary duties by failing to disclose alleged kickbacks paid by the service providers to the brokers in connection with the sales.

Defendants filed motions to compel arbitration of these claims on the basis of three separate agreements, at least one of which was executed by each plaintiff. The trial court found the arbitration clauses in two of the agreements inapplicable, but it compelled the signatories of the third agreement to arbitrate with their brokers. Invoking the

doctrine of equitable estoppel, the court also required the signatories of the third agreement to arbitrate their claims against the service providers, who were not parties to the arbitration agreements. Defendants have appealed the court's refusal to compel arbitration with the remaining plaintiffs, while the plaintiffs who were ordered to arbitration have cross-appealed that order.

We reverse the trial court's ruling on the two arbitration clauses it found inapplicable. Because each of the plaintiffs executed one or the other of these two agreements, we remand for entry of an order compelling arbitration by all plaintiffs. We dismiss the cross-appeal of the plaintiffs who were required to arbitrate under the arbitration clause contained in the third agreement because an order compelling arbitration is not appealable.

## I. BACKGROUND

In 2015, two sets of plaintiffs filed two materially identical class action lawsuits against several real estate brokers (broker defendants) and a group of title companies and other service providers (service provider defendants).[1] Each of the broker defendants represented one or more of the plaintiffs in connection with the sale of his or her home.

Plaintiffs' claims are premised on the broker defendants' use of a software program known as "TransactionPoint," alleging TransactionPoint was used to facilitate improper payments from the service provider defendants to the broker defendants in the course of the sales. As one of the complaints explained the gravamen of the claims, the brokers used TransactionPoint to "prepare transaction documents and order related real estate settlement services (such as title insurance, escrow, natural hazard disclosure

---

[1] In *Laymon v. J. Rockcliff, Inc.*, case No. A147464 (*Laymon*), the broker defendants are J. Rockcliff, Inc. and Jeffrey W. Sposito, while the service provider defendants are Ticor Title Company of California, Fidelity National Home Warranty Company, Chicago Title Company, and Fidelity National Title Company. In *Hernandez v. Mason-McDuffie Real Estate, Inc.*, case No. A147469 (*Hernandez*), the broker defendants are Mason-McDuffie Real Estate, Inc., Mason-McDuffie of Marin County, L.P., Avelino David Cobo, Melody B. Royal, Darren C. Hall, and Edmond L. Krafchow, while the service provider defendants are the same as those in *Laymon*.

2

reports, and home-warranty contracts) for Plaintiffs and other members of the Class.  In doing so, [the brokers] entered into sublicensing agreements with providers of real estate settlement services, including [the service provider defendants] . . . . Pursuant to these agreements, [the broker defendants] received undisclosed payments from the [service provider defendants] for the real estate settlement services ordered through TransactionPoint."  Plaintiffs allege that payments under the sublicense agreements operated in the nature of kickbacks; when a broker ordered settlement services from a service provider through TransactionPoint, the service provider paid the broker a "sublicense fee," purportedly for the service provider's use of the software.

The complaints allege claims for breach of fiduciary duty, fraud, unfair competition, and unjust enrichment.[2]  Plaintiffs seek declaratory relief, damages, punitive damages, and an accounting and disgorgement of the compensation received by defendants from plaintiffs in connection with the home sales.

Defendants filed motions to compel arbitration of plaintiffs' claims, based on arbitration clauses contained in printed form agreements executed by plaintiffs in connection with the home sales.  Because plaintiffs did not all execute the same agreements, three different arbitration clauses in three separate agreements were involved.  In their motion, defendants contended that all three arbitration clauses require arbitration of the claims in plaintiffs' complaints.

First, a form "Residential Listing Agreement" (hereafter RLA) contained the following arbitration clause:  "Seller and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, . . . shall be decided by neutral, binding arbitration."  The only compensation mentioned in the RLA is the commission payable by a seller to the broker, generally upon a sale of property.

---

[2] For the most part, these claims are alleged against all defendants, but some of the claims exclude defendant Fidelity National Home Warranty Company.

3

Second, the 2007 version of a form "Residential Purchase Agreement" (hereafter the 2007 RPA) required arbitration of certain disputes between buyers or sellers and their brokers, even though the brokers were not parties to the agreement. Specifically, paragraph 17A of the 2007 RPA required mediation of any dispute between the parties to the agreement, the home buyer and seller. In the event the mediation was unsuccessful, paragraph 17B(1) required arbitration of such disputes, stating: "Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, . . . shall be decided by neutral, binding arbitration, including and subject to paragraph[ 17B(3)] below." Paragraph 17B(3) required arbitration of disputes involving brokers, stating: "Buyer and Seller agree to . . . arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers."[3]

---

[3] As relevant here, the full text of paragraph 17 of the 2007 RPA reads:

"17. DISPUTE RESOLUTION:

"A. MEDIATION: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

**"B. ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.06. In all other respects, the arbitration**

4

Third, the 2010 version of a Residential Purchase Agreement (hereafter the 2010 RPA) contains a simplified version of the clause in the 2007 RPA. Paragraph 26B of the 2010 RPA states: "Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, . . . shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. . . ."

The arbitration clauses in each of these agreements required the parties affirmatively to manifest their assent to arbitration by initialing the clause. For purposes of the motions to compel, the plaintiffs fall into four groups, based on the particular arbitration clause or clauses to which they agreed. The two plaintiffs in *Laymon*, Theodore and Amy Laymon (Laymons) are bound only by the 2007 RPA arbitration clause, while Christine Himpler, a *Hernandez* plaintiff, is bound only by the RLA arbitration clause.[4] Four of the other plaintiffs in *Hernandez*, Rocky McCants, Fernando

---

**shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**

"(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: . . . [This subparagraph lists a variety of "matters" that are excluded from arbitration, such as foreclosure and unlawful detainer proceedings. We do not quote the text because none of the exclusions are relevant here.]

"(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement."

As required by Code of Civil Procedure section 1298, subdivision (c), the foregoing is followed by a "notice" informing the parties that agreeing to the arbitration provision is voluntary and will result in forfeiture of the right to judicial action.

[4] Himpler signed the 2010 RPA but did not initial the arbitration provision. We assume Himpler is not bound by that provision, and defendants do not contend otherwise.

Medina, Sixto Santiago, and James York (hereafter the McCants group), initialed clauses in both the RLA and the 2007 RPA. Finally, the three remaining plaintiffs in *Hernandez*, George and Donna Hernandez and Falesia Ragland (hereafter the Hernandez group), initialed clauses in both the RLA and the 2010 RPA.

The trial court heard the motions to compel arbitration in the two matters jointly. In a detailed written decision, the court concluded the arbitration clauses in the RLA and the 2007 RPA do not cover the claims in the complaints, but the clause in the 2010 RPA does cover them. It therefore denied arbitration with respect to the claims of the Laymons, Himpler, and the McCants group, but it granted the motion with respect to the Hernandez group. The court reasoned that the RLA's arbitration clause does not apply because the clause applies only to disputes over "the obligation to pay compensation under this Agreement," which runs from seller to broker. Because the basis of the claims is defendants' alleged failure to disclose the sublicense fees, the court held, it does not concern the sellers' obligation to pay their brokers. The court concluded the 2007 RPA arbitration clause does not cover the plaintiffs' claims because the clause requires arbitration of broker/client disputes "consistent with" paragraph 17B. Since the remainder of paragraph 17B applies only to disputes between sellers and buyers, the court reasoned, the requirement of consistency with paragraph 17B limits client/broker arbitration to "disputes between the buyer and seller which somehow entangle a broker." The court did, however, find the 2010 RPA arbitration clause applicable to these claims, since the clause applies to all disputes between clients and brokers. Finally, the court permitted the service provider defendants, who are not parties to or otherwise mentioned by the 2010 RPA, to take advantage of its terms under the doctrine of equitable estoppel.

---

Defendants state in their brief the Laymons signed an RLA but did not initial the arbitration provision, but we have not located a copy of that document in the record. Regardless, defendants do not contend the Laymons are bound by the RLA arbitration provision.

6

## II. DISCUSSION

Defendants have appealed the trial court's rulings with respect to the Laymons, the McCants group, and Himpler, while the Hernandez group has appealed the court's rulings with respect to their claims. They also challenge the trial court's ruling that the doctrine of equitable estoppel permits the service provider defendants to demand arbitration under the 2010 RPA. Defendants have moved to dismiss the Hernandez group's cross-appeal, arguing an order compelling arbitration is not appealable.

### A. *Applicable Law of Arbitration*

The relevant law was recently summarized in *Rice v. Downs* (2016) 248 Cal.App.4th 175 at pages 184–186:

"A party who claims that there is an applicable written arbitration agreement may petition the superior court for an order compelling the parties to arbitrate. [Citation.] . . . 'In determining whether an arbitration agreement applies to a specific dispute, the court may examine only the agreement itself and the complaint filed by the party refusing arbitration . . . .' [Citation.] . . . Where, as here, 'there is no "*factual* dispute as to the language of [the] agreement" [citation] or "conflicting extrinsic evidence" regarding the terms of the contract [citation], our standard of review of a trial court order granting or denying a motion to compel arbitration under [Code of Civil Procedure] section 1281.2 is de novo.' [Citation.] 'We are not bound by the trial court's construction or interpretation.' [Citation.]

" 'California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration. . . . This strong policy has resulted in the general rule that arbitration should be upheld "unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute." ' [Citation.] The party opposing arbitration has the burden of demonstrating that an arbitration clause cannot be interpreted to require arbitration of the dispute. [Citation.] Nonetheless, this policy does not override ordinary principles of contract interpretation. '[T]he contractual terms themselves must be carefully examined before the parties to the contract can be ordered to arbitration:

7

"Although '[t]he law favors contracts for arbitration of disputes between parties' [citation], ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' [Citations.] In determining the scope of an arbitration clause, '[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citation].' " ' [Citation.] '[T]he terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested.' [Citation.] [¶] . . . [¶] . . . 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' [Citation.] ' "A court must view the language in light of the instrument as a whole and not use a 'disjointed, single-paragraph, strict construction approach' [citation]." ' [Citation.] An interpretation that leaves part of a contract as surplusage is to be avoided."

## B. *Arbitration Under the RLA*

As noted above, the RLA requires arbitration between a client and broker of disputes "regarding the obligation to pay compensation under this Agreement." The trial court concluded, and plaintiffs argue here, that these claims do not concern plaintiffs' obligation to pay compensation because "plaintiffs do not dispute this obligation. Instead, they contend that the brokers breached their fiduciary duty by failing to disclose that they were also receiving *other* compensation from third parties."

If not for plaintiffs' claim for an accounting and disgorgement, we would be inclined to agree with the trial court's ruling. Compensation under the RLA is computed as a percentage of a home's sale or listing price and is payable if (1) a potential buyer offers to pay the listing price, regardless of whether the property actually sells; (2) the seller enters into a contract of sale within 30 days after the end of the listing period with a buyer who was shown the property during the listing period or submitted an offer on the property through the broker; or (3) the property is withdrawn from sale during the listing period. Because a seller can become obligated to pay a sizable commission without an actual sale of his or her home, the compensation provision of the RLA is fertile ground

for disputes over the obligation to pay. We do not doubt that the arbitration provision was intended primarily to deal with this type of dispute.

Putting aside the claim for disgorgement, this action seeks damages for the broker defendants' acceptance of kickbacks and the service provider defendants' payment of those kickbacks, in violation of the defendants' contractual and tort duties to disclose their dealings. On its surface, this would not appear to implicate the "obligation to pay compensation," since it is largely independent of the brokers' primary function under the RLA of finding a buyer.

Nonetheless, we cannot ignore the plain language of the arbitration clause (*Rice v. Downs*, *supra*, 248 Cal.App.4th at pp. 185–186), which requires arbitration of any dispute regarding the obligation to pay compensation. The claim for disgorgement necessarily implicates this obligation. Although the complaints do not specify their theory of disgorgement, the remedy is ordinarily in the nature of restitution—that is, a return of money obtained through wrongful means. (E.g., *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144–1145; *Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 294.) Alternatively, disgorgement can be granted as a form of penalty for " 'misconduct, breach of conduct [*sic*] or wilful disregard, in a material respect, of an obligation imposed upon [a broker] by the law of agency.' " (*Sierra Pacific Industries v. Carter* (1980) 104 Cal.App.3d 579, 583.) Either way, in seeking the remedy of disgorgement plaintiffs are contending the broker defendants were not entitled to retain the compensation paid to them under the RLA, a claim that self-evidently implicates plaintiffs' "obligation to pay" the commissions.

Notwithstanding their claim to return of the commissions, plaintiffs contend the RLA arbitration clause does not apply because they do not dispute their obligation to pay them—in other words, they concede the broker defendants earned their commissions by selling the homes. As plaintiffs argue, "this is a dispute about the broker's ***right to keep compensation already received***, not about Plaintiffs' 'obligation to pay compensation.' " The distinction is unavailing. In making the argument, plaintiffs are attempting to separate the broker defendants' performance of services under the RLA from the

9

allegedly wrongful conduct justifying disgorgement.  In effect, plaintiffs contend, the broker defendants became entitled to receive the commissions when they sold the homes, but their wrongful conduct in the course of the sales means they are not entitled to retain them.  The broker defendants, however, cannot be both entitled to the commissions and not entitled to them.  The wrongful conduct occurred simultaneously with the performance of services under the RLA.  That wrongful conduct either excused plaintiffs from their obligation to pay the commissions, or it did not.  Because plaintiffs' claims seek disgorgement, they constitute a dispute over plaintiffs' obligation to pay compensation under the RLA and are subject to arbitration.[5]  We therefore conclude the plaintiffs who executed the RLA—Himpler, the McCants group, and the Hernandez group—are required to arbitrate their claims.

## C.  T*he 2007 RPA*

Paragraph 17B(3) of the 2007 RPA states that "Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, *consistent with* [*paragraphs*] *17A and B*," provided the broker agrees to arbitrate the dispute.  (Italics added.)  In interpreting the clause, the trial court focused on the italicized language, concluding that because paragraphs 17A and 17B(1) require mediation and arbitration of disputes between seller and buyer, the requirement of consistency limits the duty to arbitrate disputes with brokers to those disputes that also involve a dispute between both parties to the sale.  We find that interpretation untenable because it fails to take into account the full scope of paragraphs 17A and 17B.

Paragraph 17A of the 2007 RPA does not merely require mediation of disputes between a buyer and seller.  It also (1) specifies that mediation is required regardless of whether the parties have initialed the arbitration clause, (2) requires the parties to split mediation costs, and (3) states that a party forfeits the right to attorney fees if the party

---

[5] In reaching this conclusion, we do not intend to suggest any view with respect to the availability of disgorgement of commissions as a remedy under these circumstances.  The significant issue under the RLA is the existence of a dispute, not the proper resolution of the dispute.

fails to mediate.  A reasonable reading of the requirement in paragraph 17B(3) of consistency with paragraph 17A is that the mediation conditions established in paragraph 17A apply to party/broker arbitrations as well as to party/party arbitrations.  Such a reading does not require, or even suggest, that party/broker arbitration must be restricted to disputes involving both parties.

Similarly, paragraph 17B of the 2007 RPA (1) requires buyers and sellers to arbitrate any dispute, (2) specifies the qualifications of the arbitrator, (3) establishes the applicable substantive and procedural law, (4) authorizes discovery, (5) specifies a series of matters excluded from the requirement of arbitration, and (6) requires arbitration of broker/party disputes upon agreement of the broker.  Even more than paragraph 17A, paragraph 17B goes well beyond merely requiring the arbitration of party/party disputes.  Again, a reasonable reading of the requirement in paragraph 17B(3) of consistency with paragraph 17B is that the various conditions established in paragraph 17B, particularly the constraints imposed on arbitration and the exclusions from arbitration, apply to party/broker arbitration as well as to arbitration between the parties.  The trial court's narrow focus on the fact of party/party arbitration in paragraph 17B(1), to the exclusion of the other provisions of paragraph 17B, fails to give effect to the full scope of the RPA's language.  In short, while the drafting of the clause is far from clear, the most sensible reading of the consistency requirement is not that party/broker arbitration is limited to disputes involving both parties, but that party/broker arbitration is subject to the same conditions imposed on party/party arbitration by paragraphs 17A and 17B.

In making their argument, plaintiffs mischaracterize the 2007 RPA arbitration clause as containing a "clear limitation . . . that any arbitration between 'Buyer *and* Seller' and 'either or both Brokers' be '*consistent with* 17A and B.' "  This is not a fair reading of the language of the clause.  Instead, it states both buyer and seller agree to arbitrate disputes or claims involving their brokers.  In doing so, the language does not expressly limit buyers' and sellers' obligation to arbitrate with their brokers to disputes involving both of the parties, as plaintiffs' paraphrase suggests.  The only language supporting such a limitation is the "consistent with" phrase, which, as discussed above,

should be read to refer to the manner of arbitration, rather than any limit on its subject matter.[6]  Plaintiffs also contend that the present reading renders superfluous the phrase, "any resulting transaction" from paragraph 17B(1), which requires the parties to arbitrate "any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction."  Assuming the limitation applies to party/broker disputes, the present reading does not render it superfluous.  Plaintiffs' claims plainly arise from the defendants' conduct in connection with the real estate transactions that were the subject of the 2007 RPA's.[7]

Plaintiffs contend defendants failed their initial " ' "burden of proving the existence of a valid agreement to arbitrate." ' " (*Hernandez v. Ross Stores, Inc.* (2016) 7 Cal.App.5th 171, 176.)  As phrased, their argument conflates the issue of demonstrating a valid agreement with the issue of the agreement's interpretation.  Because defendants produced 2007 RPA's containing arbitration clauses initialed by the Laymons and the members of the McCants group, and because those plaintiffs did not dispute the genuineness of those agreements, defendants carried their burden of demonstrating a valid agreement to arbitrate by these plaintiffs.  Whether that agreement to arbitrate covers the present dispute is a separate issue that, for the reasons discussed above, we resolve against plaintiffs.

Plaintiffs also contend the 2007 RPA arbitration clause should be interpreted against the broker defendants because it is adhesive.  An arbitration clause is a contract of adhesion if "it lies within a standardized form drafted and imposed by a party with superior bargaining strength, leaving plaintiffs with only the option of adhering to the

---

[6] In making their argument, plaintiffs include a lengthy discussion of *Shaw v. People ex rel. Chiang* (2009) 175 Cal.App.4th 577, which considers the interpretation of the language of a statewide proposition containing the phrase "consistent with." (*Id.* at pp. 589–590.)  We find the context and structure of the proposition's language to be sufficiently different from the present clause as to provide no useful guidance here.

[7] Plaintiffs also contend the parties would reasonably have expected the party/broker obligation to apply only to disputes involving both parties.  We fail to understand why the parties' expectations would differ from the most sensible reading of the language.

contract or rejecting it." (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 286.) Because it was voluntary, the 2007 RPA arbitration clause was not adhesive. The arbitration clause required each party to indicate his or her acceptance by initialing the provision. In the absence of such an acceptance, the arbitration clause did not become a part of the agreement. Because the parties were not presented only with the option of adhering to the entire RPA or rejecting it, the clause was not adhesive. For a similar reason, we find unpersuasive plaintiffs' argument the arbitration clauses lacked mutuality. As recognized in *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83 (*Hock Investment*), the provision in the 2007 RPA relating to arbitration with the nonparty brokers is in the nature of an offer; if buyers or sellers initialed the provision, they were effectively offering to arbitrate with their brokers. (*Id.* at p. 89.) Pursuant to the text of the provision, the broker accepted the offer by agreeing in writing to arbitrate. Because this agreement was required prior to the formation of a binding agreement to arbitrate, the provisions did not lack mutuality.[8]

Because every plaintiff initialed an arbitration clause either in the RLA or the 2007 RPA, our holdings have the effect of requiring every plaintiff to arbitrate. Plaintiffs' argument with respect to Code of Civil Procedure section 1281.2, subdivision (c), which permits the court to stay or decline to order an arbitration if there is a parallel civil action, is therefore inapplicable.

**D.  *The Hernandez Group's Cross-appeal***

The Hernandez group has appealed the portion of the trial court's decision requiring them to arbitrate their claims against both the broker defendants and the service provider defendants under the 2010 RPA. We agree with defendants that the court's

---

[8] *Hock Investment*, which considered the issue of mutuality, is readily distinguishable. In *Hock Investment*, one of the *parties* initialed the arbitration provision, while the other did not. The initialing party argued it could not be compelled to arbitrate because, in the absence of the other party's initials, the provision lacked mutuality. The court concluded it was unnecessary to address the argument because, it sensibly held, no agreement to arbitrate was formed when one party declined to initial the provision. (*Hock Investment*, *supra*, 68 Cal.App.4th at pp. 91–92.)

order is nonappealable and grant their motion to dismiss the Hernandez group's cross-appeal.

Under California law, the right of appeal is statutory. (*Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1021.) Although Code of Civil Procedure section 1294, subdivision (a) authorizes the appeal of an order denying a petition to compel arbitration, there is no similar authorization for the appeal of an order granting such a petition. Accordingly, it is generally accepted that an order compelling arbitration is not appealable. (*Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 242.)

The Hernandez group contends the trial court's order compelling them to arbitrate is nonetheless appealable under Code of Civil Procedure section 1294.2, which states that in any appeal under the title of the Code of Civil Procedure governing arbitration, "the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party." This section, which "simply ensures that the appellate court can effectuate its ruling on an arbitration order, by permitting review of any other trial court decision affecting that specific order," does not, however, make an order granting arbitration appealable merely because it was rendered at the same time as an appealable order denying arbitration. (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 768–769.)

### III. DISPOSITION

The portion of the trial court's order denying arbitration pursuant to the RLA and the 2007 RPA is vacated, and those rulings are reversed. The matter is remanded to the trial court with instructions to enter an order compelling all plaintiffs to arbitrate their claims with the broker defendants. The cross-appeal of the trial court's order compelling the Hernandez group to arbitrate their claims against the broker defendants and the service provider defendants under the 2010 RPA is dismissed. The defendants may recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

14

_____

Margulies, J.

We concur:

_____

Humes, P.J.

_____

Dondero, J.

Filed 6/9/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THEODORE LAYMON et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> J. ROCKCLIFF, INC., et al., <br><br> Defendants and Appellants. | A147464 <br><br> (Contra Costa County <br> Super. Ct. No. MSC 15-00186) |
| GEORGE HERNANDEZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MASON-MCDUFFIE REAL ESTATE, INC., et al., <br><br> Defendants and Appellants. | A147469 <br><br> (Contra Costa County <br> Super. Ct. No. MSC 15-01148) |

THE COURT:

The opinion in the above-entitled matter filed on May 23, 2017, was not certified for publication in the Official Reports. After the court's review of requests under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:

_____
Margulies, Acting P.J.

16

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Barry P. Goode

Counsel:

Cooley LLP, William P. Donovan, Jr., Whitty Somvichian, Heather C. Meservy, and Nathaniel R. Cooper for Defendants and Appellants J. Rockcliff, Inc., Jeffrey W. Sposito, Ticor Title Company of California, Fidelity National Home Warranty Company, Chicago Title Company, and Fidelity National Title Company.

Donahue Fitzgerald, LLP, John C. Kirke and Megan S. Shaked for Defendants and Appellants Mason-McDuffie Real Estate, Inc., Mason-McDuffie of Marin County, L.P., Avelino David Cobo, Melody B. Royal, Darren C. Hall, and Edmond L. Krafchow

Bottini & Bottini, Inc., Francis A. Bottini, Jr., Albert Y. Chang, and Yury A. Kolesnikov for Plaintiffs and Appellants Theodore Laymon, Amy Laymon, George Hernandez, Donna Hernandez, Christine Himpler, Rocky McCants, Fernando Medina, Falesia Ragland, Sixto Santiago, and James York