Filed 7/21/21  Shechter v. Alta Hospitals System, LLC CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| PAGIEL SHECHTER et al., | B304480 |
| Plaintiffs and Respondents, v. | (Los Angeles County Super. Ct. No. 19STCV30907) |
| ALTA HOSPITALS SYSTEM, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Affirmed.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, Eric C. Schwettmann and John J. Manier for Defendants and Appellants Alta Hospitals System, LLC, Southern California Healthcare System, Inc., David R. Topper, Kathleen Mello-Navejas, Michael Klepin and Kathren Alkasspooles.

Khouri Law Firm, Michael J. Khouri and Michael Tran for Plaintiffs and Respondents Pagiel Shechter and Pagiel Shechter, M.D., Inc.

Alta Hospitals System, LLC (Alta), Southern California HealthCare System, Inc. (SCHS), David R. Topper, Kathleen Mello-Navejas, Michael Klepin and Kathren Alkasspooles (collectively hospital defendants) petitioned the superior court to compel arbitration of the claims asserted by Dr. Pagiel Shechter and his medical corporation, Pagiel Shechter, M.D., Inc., (collectively Shechter plaintiffs) in a complaint alleging breach of contract, unlawful retaliation, intentional interference with prospective economic advantage and unlawful business practices. The court denied the petition. Because the hospital defendants failed to demonstrate the dispute arose out of the agreement that contained the arbitration clause, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Complaint*

According to the allegations in the Shechter plaintiffs' complaint, Dr. Shechter is a medical doctor with a specialty in nephrology and the owner of Pagiel Shechter, M.D., Inc., the medical corporation "through which [he] practices medicine." Alta and SCHS own several hospitals throughout Los Angeles County, including Southern California Hospital in Culver City (SCHS Culver City). Topper and Mello-Navejas are owners, officers, directors or managing agents of SCHS and/or Alta; Klepin is the chief executive officer of SCHS Culver City; and Alkasspooles is a vice president at SCHS and Alta.[1]

The complaint alleged causes of action for breach of contract, unlawful retaliation in violation of Health and Safety

---

[1] The complaint also named Jamshid Niknam, Martha Nishinaka and Rajendra Prasad as defendants. They did not seek arbitration.

Code section 1278.5, intentional interference with prospective economic advantage and unlawful business practices in violation of Business and Professions Code section 17200.

In support of their breach of contract claim the Shechter plaintiffs alleged that Topper and Mello-Navejas approached Dr. Shechter on behalf of SCHS/Alta in 2008 to obtain his agreement to move his medical practice to Brotman Memorial Medical Center in Culver City, the predecessor-in-interest to SCHS Culver City. In return, SCHS and Alta promised to (1) grant Dr. Shechter an exclusive contract to provide acute dialysis services to patients at Brotman and at each SCHS hospital campus; (2) designate Dr. Shechter as the preferred nephrologist at Brotman and all SCHS hospital campuses; and (3) place Dr. Shechter on the emergency room panel at least four times a month at other SCHS hospital campuses. In reliance on these oral promises, in 2009 Dr. Shechter moved his practice to Brotman, incurring substantial financial obligations in the process. Although Brotman provided Dr. Shechter with an acute dialysis services contract (the IRCAD dialysis agreement), other promises Topper and Mello-Navejas had made were not honored, including designating Dr. Shechter SCHS's preferred nephrologist at all SCHS campuses. In addition, although he was placed on the emergency room panel within months after arriving at Brotman, Dr. Shechter's participation on the panel was gradually reduced and then eliminated.[2]

---

[2] In paragraph 31 of their complaint the Shechter plaintiffs alleged, "Defendants failed to perform their obligations under the oral contract in a number of ways. Plaintiff was not placed on the ER panel at least four times a month; was not the preferred

3

In support of their unlawful retaliation claim the Shechter plaintiffs alleged that Dr. Shechter complained to staff and officers at SCHS Culver City several times in 2018 about the hospital's substandard quality of care, including its practice of prematurely discharging patients. Instead of addressing these complaints, SCHS, Alta, Topper, Klepin and Niknam retaliated against Shechter by falsely claiming he suffered from an anger management problem and requiring him to seek psychiatric treatment in order to practice at SCHS, effectively suspending him from SCHS Culver City.

In support of their claims for unfair business practices and intentional interference with prospective economic advantage, the Shechter plaintiffs alleged the hospital defendants engaged in actions designed to disrupt Dr. Shechter's economic relationships with other hospitals and physicians, including by making false, unfounded and potentially defamatory complaints against him. In addition, Alkasspooles and Mello-Navejas, acting on behalf of SCHS and Alta, convinced Dr. Shechter's long-time office manager to leave Dr. Shechter's employ and work for a competing physician with the effect of "stealing" his patients and depriving him of anticipated income.

2. *The Hospital Defendants' Petition To Compel Arbitration of Each Cause of Action in the Complaint*

After answering the complaint on November 6, 2019, on December 16, 2019 the hospital defendants petitioned to compel arbitration of all claims in the complaint. In their moving papers the hospital defendants presented evidence of an acute dialysis services agreement dated March 12, 2010 between Brotman, on

nephrologists for all patients at Southern California Hospitals; and was not given an acute dialysis contract with Alta/SCHS."

4

the one hand, and Intensive Renal Care Acute Dialysis (IRCAD), a corporation wholly owned by Dr. Shechter, on the other hand. Dr. Shechter signed the agreement on behalf of IRCAD. According to the terms of the agreement, IRCAD was to provide Brotman with registered nurses and duly licensed technicians for the provision of acute dialysis services. The one-year agreement was amended and renewed eight times, the latest occurring on November 27, 2017 between IRCAD and SCHS.

The original IRCAD dialysis agreement contained an arbitration provision, which remained unchanged in each of the subsequent amendments/renewals. It provided, "Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or in the breach hereof shall be determined and settled by arbitration in Los Angeles County, California, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of the State. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof."

The IRCAD dialysis agreement stated it "contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter" and "shall inure to the benefit of and be binding upon the parties herein and their respective heirs, representatives, successors and permitted assigns."

In their petition to compel arbitration the hospital defendants asserted, without explanation, each of the Shechter plaintiffs' causes of action arose from the IRCAD dialysis

agreement. Although SCHS was the only one of the hospital defendants to sign the renewed agreement, the hospital defendants argued each of them could enforce the arbitration provision: Alta and SCHS were both successors-in-interest to Brotman, which had signed the original agreement; and Topper, Mello-Navejas, Klepin and Alkasspooles were agents and representatives of SCHS and Alta, as the complaint alleged. In addition, while recognizing Dr. Shechter signed the IRCAD dialysis agreement on behalf of IRCAD, and IRCAD was not a party to the lawsuit, the hospital defendants argued Dr. Shechter, Pagiel Shechter, M.D., Inc. and IRCAD were "one and the same." They requested the court take judicial notice of documents filed with the Secretary of State reflecting that Dr. Shechter was the sole owner and shareholder of both Pagiel Shechter, M.D., Inc. and IRCAD.

The Shechter plaintiffs refused the hospital defendants' informal request to arbitrate, did not file any response to the hospital defendants' petition to compel arbitration and did not appear at the hearing on the petition.

3. *The Court's Ruling Denying the Petition To Compel Arbitration*

After granting the hospital defendants' request for judicial notice of the documents filed with the Secretary of State, the court denied their petition to compel arbitration. Because the Shechter plaintiffs were not parties to the IRCAD dialysis agreement and none of the causes of action was "inextricably intertwined" with that contract, the court ruled, the hospital defendants could not use that agreement as the basis to compel arbitration.

6

**DISCUSSION**

1. *Governing Law and Standard of Review*

Code of Civil Procedure section 1281.2 requires the trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists." As the language of this section makes plain, the threshold question presented by every petition to compel arbitration is whether an agreement to arbitrate exists. (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233 [it is an "overarching principle that arbitration is a matter of contract"]; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 626 ["the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute"]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) [""a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit""]; *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 656 ["[u]nder both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate," internal quotation marks and italics omitted]; *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787 ["[t]here is a strong public

7

policy favoring contractual arbitration, but that policy does not extend to parties who have not agreed to arbitrate"].)[3]

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*); *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 240; see generally *Lindemann v. Hume* (2012) 204 Cal.App.4th 556, 568 ["'the scope of arbitration "is, of course, a matter of agreement between the parties"'"].) If an agreement to arbitrate exists, the burden shifts to the party refusing arbitration to demonstrate the agreement is unenforceable. (*Rosenthal*, at p. 413; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; see *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 [section 2 of

---

[3] The hospital defendants assert this action involves interstate commerce and is therefore governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.). Even if the FAA applies, an issue we do not resolve, the question whether an agreement to arbitrate a particular controversy exists is governed by state law. (See *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 ["[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . [courts] generally should apply ordinary . . . principles that govern the formation of contracts"]; *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961-962 [rejecting argument that FAA preempts state contract principles; the question whether an agreement has been formed to arbitrate a particular dispute is one of contract interpretation under state law]; see generally *E.E.O.C. v. Waffle House, Inc.* (2002) 534 U.S. 279, 289 [FAA simply reverses judicial hostility to arbitration agreements by placing them on same footing as any other contract].)

the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract'"].)

We review de novo the superior court's interpretation of an arbitration agreement, including the scope of the agreement, when, as here, that interpretation does not depend on the resolution of conflicting extrinsic evidence. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 355 (*Victrola 89*); *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.) In light of the public policy favoring arbitration, any doubt as to whether a claim falls within the arbitration clause is to be resolved in favor of arbitration. (*Victrola 89*, at p. 356.)

2. *The Hospital Defendants Failed To Demonstrate the Dispute Arose from the Agreement Containing the Arbitration Provision*

The hospital defendants contend they carried their burden to demonstrate the existence of a valid arbitration agreement between SCHS and/or its predecessor-in-interest, on the one hand, and Dr. Shechter, on the other hand. That Dr. Shechter signed the IRCAD dialysis agreement on behalf of IRCAD, and not himself or his medical corporation, they assert, is immaterial because he is the sole owner and shareholder of both corporations. And, in any event, they argue, the claims pleaded in the Shechter plaintiffs' complaint are inextricably intertwined with the IRCAD dialysis agreement, precluding the Shechter plaintiffs under the doctrine of equitable estoppel from denying the existence of the agreement to arbitrate contained in that contract. (See *DMS Services, LLC v. Superior Court, supra*, 205 Cal.App.4th at p. 1357 [plaintiff who has not signed

9

arbitration agreement may nonetheless be compelled to arbitrate when his or her claims rely on, and are inextricably intertwined with, the agreement containing the arbitration provision]; *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1242 [same].)

The hospital defendants' arguments relating to their standing to enforce the arbitration provision as agents or third party beneficiaries of the IRCAD dialysis agreement, and to the Shechter plaintiffs' inability under the doctrine of equitable estoppel to disclaim an agreement on which they allegedly rely to support their claims, miss the mark. Even if each of the hospital defendants could enforce the arbitration provision, the question remains whether the dispute falls within the scope of that provision. The hospital defendants assert it does, but made no effort, either in the trial court or on appeal, to connect any of the claims in the complaint with the IRCAD dialysis agreement.

As pleaded, none of the Shechter plaintiffs' causes of action relates to the IRCAD dialysis agreement. The breach of contract cause of action concerns the breach of oral promises SCHS and its representatives made to Dr. Shechter to induce him to move his medical practice to Brotman. That one of those promises was to grant an acute dialysis services contract is beside the point. There is no claim the terms of the IRCAD dialysis contract were breached. To the extent the Shechter plaintiffs allege the hospital defendants failed to offer contracts to provide acute dialysis services at all SCHS campuses, not just at Brotman, it is the alleged breach of the oral promise, not any of the terms of the IRCAD dialysis agreement, that forms the basis of that claim. Nor do the allegations in any of the other causes of action— unlawful retaliation, unfair business practices and interference

10

with prospective economic advantage—refer, relate to or arise out of the agreement to provide acute dialysis services through IRCAD, a corporate entity separate from Dr. Shechter's medical practice.

Perhaps recognizing this disconnect between their petition and the complaint, the hospital defendants contend it was the Shechter plaintiffs' burden, as the parties opposing arbitration, to demonstrate their claims fell outside the scope of the arbitration agreement. Relying on oft-cited language that the "'party opposing arbitration has the burden of demonstrating that an arbitration clause cannot be interpreted to require arbitration of a dispute'" (*Victrola 89, supra,* 46 Cal.App.5th at p. 356; accord, *Rice v. Downs* (2016) 248 Cal.App.4th 175, 185), the hospital defendants contend that, because the Shechter plaintiffs did not file an opposition to the petition or attend the hearing, they forfeited any right to object the agreement does not cover the disputes in question.

The hospital defendants misapprehend the parties' respective burdens. The party seeking to compel arbitration bears an initial burden to make a prima facie showing the claims asserted in the complaint are covered by a valid agreement to arbitrate. (*Rosenthal, supra,* 14 Cal.4th at p. 413; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 710-711.) "'In determining whether an arbitration agreement applies to a specific dispute, the court may examine only the agreement itself and the complaint filed by the party refusing arbitration.'" (*Laymon v. J. Rockliff, Inc.* (2017) 12 Cal.App.5th 812, 819; accord, *Rice v. Downs, supra*, 248 Cal.App.4th at pp. 184-185.) When that prima facie showing has been made, the court must compel arbitration unless the

11

party opposing arbitration demonstrates the dispute falls outside the scope of the agreement.  (*Laymon*, at p. 820; see *Molecular Analytical,* at pp. 710-711 [where "defendants made a sufficient prima facie showing of an agreement to arbitrate, based not only on the allegations of the complaint but also on their moving papers and on their proffer of the [arbitration] [a]greement," the burden was on the party resisting arbitration to demonstrate its claims were not arbitrable].)[4]

The hospital defendants never carried their initial burden. As discussed, there was no effort to demonstrate the Shechter plaintiffs' claims arose out of the IRCAD dialysis agreement. Instead, the hospital defendants attempted to show that Dr. Shechter, his medical corporation and IRCAD were all effectively the same entity by providing documents filed with the Secretary of State reflecting that Dr. Shechter owned both IRCAD and Pagiel Shechter, M.D., Inc.  However, no evidence

---

[4]    Although parties may delegate to the arbitrator the question of arbitrability—whether an arbitration agreement governs a particular dispute—(*Henry Schein, Inc. v. Archer & White Sales, Inc.* (Jan. 8, 2019, No. 17-1272) __ U.S. __ [139 S.Ct. 524, 527; 202 L.Ed.2d 480]; *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68-70), the hospital defendants do not argue, nor do the arbitration agreement and the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration (arguably incorporated by reference in the acute dialysis services agreement) make clear, that the parties intended for the arbitrator, rather than the court, to decide questions of arbitrability.  (See *Schein*, at p. 531 ["courts 'should not assume that the parties agreed to arbitrate arbitrability'" absent "'clear and unmistakable evidence'" of that intent in the agreement]; *First Options of Chicago, Inc. v. Kaplan, supra*, 514 U.S. at p. 944 [same].)

was submitted that Dr. Shechter conducted his medical practice through IRCAD. If anything, the judicially noticed documents merely confirmed Dr. Shechter owned and operated two distinct corporations, one of which entered into the acute dialysis services agreement while the other sued the hospital defendants for unrelated causes of action.[5]

In their reply brief the hospital defendants assert SCHS's acute dialysis services agreement with IRCAD comprises "the only business relationship" between Dr. Shechter and SCHS and thus the broad arbitration provision in the IRCAD contract must necessarily relate to all of Dr. Shechter's claims against SCHS and its agents and representatives. To the extent that is the case, the hospital defendants should have included with their petition supporting declarations explaining SCHS's relationship with IRCAD and the IRCAD contract's connection to the causes of action in the complaint. They did not. Because the hospital defendants failed to carry their initial burden to demonstrate the claims asserted in the complaint related to, were connected with, or arose out of the IRCAD dialysis contract, the court did not err in denying their petition to compel arbitration.

---

[5] The Articles of Incorporation for Pagiel Shechter, M.D., Inc. provide its purpose "is to engage in the PROFESSION of Medicine and any other lawful activities." The Articles of Incorporation for IRCAD provide IRCAD's purpose "is to engage in any lawful act or activity for which a corporation may be organized under the GENERAL CORPORATION LAW of California."

13

## DISPOSITION

The order denying the petition of SCHS, Alta, Topper, Mello-Navejas, Klepin and Alkasspooles to compel arbitration is affirmed.  Dr. Shechter and Pagiel Shechter, M.D., Inc. are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


FEUER, J.


McCORMICK, J.[*]

---

[*]     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14