Filed 12/29/23  P. v. Olguin CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JUAN CANELA OLGUIN,<br><br>        Defendant and Appellant. | B329490<br><br>(Los Angeles County<br>Super. Ct. No. BA062441) |

        APPEAL from an order of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

        Claire H. Kim for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In a hearing that occurred in 1992, appellant Juan Canela Olguin pled guilty to two different crimes in two different cases. Before accepting the pleas, the trial court advised Olguin that his pleas could have adverse immigration consequences; Olguin stated he understood.

Nearly three decades later, Olguin brought a motion under Penal Code section 1473.7 to vacate his conviction in one of those cases, claiming he did not meaningfully understand the adverse immigration consequences of his guilty plea.[1]  The superior court disbelieved Olguin and denied his claim.  Olguin did not appeal this denial.  Instead, he brought a second motion under the same statute, again claiming he did not understand the adverse immigration consequences of his guilty plea.  The court again denied the motion and Olguin appealed.  We affirmed and, after our Supreme Court denied review, we issued a remittitur.

Five months after he filed his initial motion in the first case, Olguin also filed a motion in the second case under section 1473.7, again claiming he did not meaningfully understand the adverse immigration consequences of his guilty plea; the superior court denied this motion, too.  Again, rather than appeal that denial, Olguin filed a second motion in the second case under the same statute on the same grounds.  This current appeal is from the superior court's denial of that second motion in the second case.

As discussed below, we conclude that the superior court has, in a final decision, already resolved against Olguin the issue of whether he meaningfully understood the immigration

---

[1] Undesignated statutory references are to the Penal Code.

consequences of his guilty pleas. Because issue preclusion bars him from relitigating this issue, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.     *Olguin Pleads Guilty in Two Cases*

In 1991, in Case No. BA045520 (the 520 Case), Olguin was charged with robbery and possession of cocaine.[3] At his arraignment, the trial court advised him: "If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." After the trial court dismissed the robbery count and held Olguin to answer for the cocaine possession, Olguin was placed on informal probation in a deferred entry of judgment program.

In August 1992, in Case No. BA062441 (the 441 Case), Olguin was charged with one count of grand theft. At his arraignment, he was again advised: "If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged may have the consequences of deportation,

---

[2] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

[3] In the 520 Case, Olguin was referred to as Pedro Prado Canela. In a February 2023 hearing in the case on appeal, his counsel clarified to the court that Pedro Prado Canela and Juan Canela Olguin were the same person. Because the caption in this case is *People v. Juan Canela Olguin*, we refer to appellant as Olguin herein.

3

exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Olguin pled not guilty. After a preliminary hearing, Olguin was held to answer on grand theft.

In September 1992, Olguin pled guilty in both cases at the same hearing. In accepting his pleas, the trial court once again advised him: "If you're not a citizen of the United States, pleading guilty to these two charges could very prevent [*sic*] you from becoming a citizen, get you deported. [¶] If you're here lawfully but not as a citizen, that right could be taken from you. You could be denied a right to remain in the country lawfully in the future. Do you understand that?" Olguin responded: "Yes." After the court accepted the pleas, Olguin's counsel asked the court that "in the event he gets deported, if the formal probation could revert to probation without supervision." The court agreed and addressed Olguin directly, stating: "I'm going to place you officially, sir, on formal probation. If you are deported, that will revert to probation without formal supervision." The court sentenced Olguin to three years of probation, including 365 days of jail time. In 1993, Olguin was accused of violating probation. An immigration judge ordered him removed from the United States on April 5, 1993.

## B.    *Olguin Repeatedly Asks to Vacate His Convictions*

### 1.    **The 520 Case**

#### (a)    **First Motion**

In September 2019, Olguin filed a motion in the 520 Case under section 1473.7, arguing that his conviction was "legally

4

invalid" because he did not "meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of his guilty plea. He claimed he was "never advised of the proper immigration consequences of his guilty plea" and would not have pled guilty had he understood the immigration consequences of his plea.

The superior court denied the motion, finding that Olguin had not met his burden to demonstrate he did not understand the immigration consequences of his plea. The court cited to Olguin's affirmative response to the trial court's initial question to him regarding his understanding of the potential immigration consequences of his plea, to the request of Olguin's counsel to change Olguin's status from formal probation to probation without supervision should he be deported, and to the direct statement the court made to Olguin regarding how his probation would change from formal to unsupervised should he be deported.

Olguin's counsel argued that the trial court's warning was insufficient because it stated only that Olguin "could" be deported, not that he would be. The superior court rejected this argument, reasoning that courts could not truthfully give a definitive statement that a defendant would be deported without being "psychic," because no one could know with certainty whether a defendant would "definitely" be deported—the court posited a hypothetical in which an immigrant was granted citizenship for performing a heroic act. The superior court added that the law required more than a defendant's averment that he did not understand the immigration consequences of his plea because such a standard would permit anybody to "just file a declaration and simply say 'I didn't underst[an]d what I was told

5

in 1985 and didn't understand that this was going to happen.' It's called lying. It's called credibility."

During a discussion with Olguin's counsel regarding Olguin's statement at a preliminary hearing that he did not understand his constitutional rights very well, the court interpreted Olguin's statement "as a precursor to letting the defendant know you've got to know all your rights. You've got to talk to your lawyer and know your rights. And at that time[,] he said whatever it was that he said and that it is a good point, in that he would have to understand what was happening down the road, *which in this Court's opinion[,] he did*." (Italics added.)

Olguin did not appeal the denial of this motion.

### **(b)  Second Motion**

In July 2021, Olguin filed a second motion under section 1473.7, arguing he had received ineffective assistance of counsel because his counsel never advised him of the adverse immigration consequences of his plea. He claimed again that he therefore "did not 'meaningfully[] understand, defend[] against, or knowingly accept the actual or potential adverse immigration consequences' of his plea." The superior court dismissed the motion with prejudice, finding the motion had previously been filed and heard and "[t]here's no changed circumstances, no new facts . . . ."

Olguin appealed the denial of this second motion and we affirmed, holding he had failed to demonstrate prejudice from the court's dismissal order. (*People v. Canela* (Oct. 10, 2022, B315246), 13–14.)[4]  Specifically, we found that he had failed to

---

[4] In the instant appeal, we granted Olguin's request to take judicial notice of the record from the B315246 appeal.

6

demonstrate his counsel was ineffective and that nothing in his second motion would have affected the court's previous determination that he was not credible in claiming he did not understand the immigration consequences of his plea. (*Id.* at pp. 11–13.) In December 2022, our Supreme Court denied Olguin's petition for review and we issued a remittitur.

## 2. The 441 Case

### (a) First Motion

In February 2020, Olguin filed a motion in propria persona in the 441 Case under section 1473.7, asking to vacate his conviction and sentence. As in his motions in the 520 Case, he claimed that when he pled guilty, he did "not meaningfully understand, defend against, or knowingly accept the immigration consequences of a conviction" and "was not advised of the proper immigration consequences" of pleading guilty. He claimed if he had "meaningfully underst[oo]d that by accepting the guilty plea, [he] was going to lose [his] rights," he never would have accepted the plea, and would have "fought [his] case" or "accepted a harsher punishment or even taken more time incarcerated to avoid the deportation." The superior court summarily denied the petition "for lack of eligibility under the statute, lack of service to the necessary parties." Olguin did not appeal the denial of this motion.

### (b) Second Motion

Instead, in January 2023, Olguin—now again with the same retained counsel that filed the motions in the 520 Case—filed a second motion for relief under section 1473.7. The motion was based on the same grounds but included more detail, such as

7

that the record was "silent as to whether defense counsel discussed defendant's noncitizen status during the plea negotiations with the prosecutor or whether the prosecutor was made aware of petitioner's noncitizen status when crafting the plea agreement with his attorney"; that the court "used tentative language" in advising Olguin regarding deportation; and that there was "no written waiver form." Although the district attorney's office stated it would not oppose Olguin's motion, the superior court nevertheless denied it. The court remarked that Olguin had filed "successive motions" of the same nature—including one whose denial had been appealed and affirmed—and that, when Olguin pled guilty, "the discussions regarding deportation were clearly, clearly, clearly had." Olguin timely appealed this second denial.

## DISCUSSION

Olguin contends the superior court erred in denying his motion because the evidence he submitted established that his counsel failed to advise him of the immigration consequences of his plea, as a result of which he "was ignorant of his options and lost the opportunity to make a meaningful and knowing decision about the immigration consequences of the plea." Olguin further contends his extensive ties to the United States and the likelihood of resolving his case with a plea agreement without immigration consequences demonstrated he would have "rejected the plea and either gone to trial or sought a different, immigration-neutral disposition." Finally, Olguin argues the court erred in denying his motion as successive because "the laws governing 1473.7 statutes have evolved since 2019" and issue preclusion is inapplicable.

8

The People counter that the court properly denied the motion as successive, the motion was barred by issue preclusion, and even had the court erred in denying the motion as successive or precluded, such an error was harmless because a different result was not reasonably probable.  The People add that, contrary to Olguin's claim, the court also correctly considered and rejected his motion on the merits.

Because we conclude that Olguin's motion was barred by issue preclusion, we need not consider the parties' other arguments.

### A.    *Governing Law*

"A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).)  "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences."  (*People v. Vivar* (2021) 11 Cal.5th 510, 529; see also *People v. Mejia* (2019) 36 Cal.App.5th 859, 862 ["to establish a 'prejudicial error' under section 1473.7, a person need only show by a preponderance of the evidence: (1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges"].)

9

"In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel.  [Citations.]  This common law doctrine is 'grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." '  [Citation.]  The doctrine ' "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." '  [Citation.]  It applies in criminal as well as civil proceedings."  (*People v. Strong* (2022) 13 Cal.5th 698, 715–716.)  "[I]ssue preclusion bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' "  (*Id.* at p. 716.)

### B.    *Analysis*

#### 1.    **Issue Preclusion Applies**

In September 2019, Olguin brought a motion in the 520 Case under section 1473.7, arguing that his conviction was invalid because he was never properly advised of the immigration consequences of his plea, and would not have pled guilty had he understood those consequences.  The superior court denied the motion, finding that Olguin had understood the immigration

10

consequences of his plea, and disbelieving Olguin's assertions to the contrary. Olguin did not appeal the order denying his motion, and that order is now final.

Thus, the issue of whether Olguin understood the immigration consequences of his guilty pleas in both the 520 Case and the 441 Case—as both pleas occurred simultaneously—was actually litigated in the 520 Case, and necessarily decided against him in a final decision on the merits. Olguin is therefore precluded from relitigating the same issue.

Olguin argues that the issue preclusion factors have not been met because: "Trial court ruling is based on 2019 and 2021 motions to vacate BA045520, which is a different case, where the trial court did not consider the factors required in deciding 1473.7 motions under existing law. [*sic*]" To the extent that we understand this argument, Olguin is contending that the superior court's ruling in the 520 Case cannot have preclusive effect because the court did not consider the factors required in deciding motions under section 1473.7. We disagree. Olguin cites nothing in the record to support his contention that the superior court did not consider the relevant factors under section 1473.7 and, in any case, ample evidence demonstrates it considered a key factor—whether Olguin understood the immigration consequences of his guilty plea—and decided that factor against him.

### 2. Equity Does Not Mandate a Different Result

Olguin contends that even if all elements necessary for issue preclusion were met, equity precludes us from applying the doctrine in this case, because his "interest in a [*sic*] having his second motion considered by the trial court is consistent with

11

maintaining integrity and public confidence in the judicial system, while the application of collateral estoppel threatens those policies" and because applying issue preclusion "would frustrate the legislative intent of section 1473.7"—"ensuring that a person prosecuted in state court does not suffer penalties or adverse consequences as a result of a legally invalid conviction." Olguin additionally argues that "[t]he Legislature did not intend those motions brought under the new statutory standard would be denied because courts had denied earlier motions to vacate brought on different grounds." We find Olguin's arguments unpersuasive.

As discussed above, the superior court denied Olguin's initial motion in the 520 Case because, based on the transcript from the plea hearing, it found not credible Olguin's professed ignorance of the immigration consequences of his guilty pleas. Olguin cites nothing in his successive motions that would have changed the court's mind about this finding—a finding he never appealed. "Filing a second motion under section 1473.7 and asking the superior court to conduct the same analysis and come to a different conclusion does not preserve the integrity of the judicial system or promote judicial economy." (*People v. DeMontoya* (2022) 85 Cal.App.5th 1159, 1182.) To the extent that Olguin argues the law has changed in some fashion since the first denial, Olguin presents no authority showing a change in the requirement that he demonstrate he did not "meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty." (§ 1473.7, subd. (a)(1).) Whether any other portion of the law has changed, Olguin is not entitled to relief unless he can make a showing of his ignorance. (See *People v. Perez* (2018) 19

12

Cal.App.5th 818, 829 [affirming trial court's denial of section 1473.7 motion when "record belies [appellant's] contention that he did not meaningfully understand the immigration consequences of his plea"].)

To obtain relief under section 1473.7, Olguin was required to demonstrate that he did not understand the immigration consequences of his plea. Because he is precluded from making such an argument, and there is no equitable reason to bar the application of issue preclusion, the superior court did not err in denying his motion.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.