[No. B235819. Second Dist., Div. Seven. May 15, 2012.]

DMS SERVICES, LLC et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ZURICH SERVICES CORPORATION et al., Real Parties in Interest.

## Counsel

Roxborough, Pomerance, Nye & Adreani, Nicholas P. Roxborough and Joseph C. Gjonola for Petitioners.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, William L. Carter and Amy J. Winn, Deputy Attorneys General, for Insurance Commissioner Dave Jones as Amicus Curiae on behalf of Petitioners.

Locke Lord, Steven T. Whitmer, Julie L. Young and Stephen A. Tuggy for Real Parties in Interest.

SNR Denton US and Sean McEneaney for American Insurance Association as Amicus Curiae on behalf of Real Parties in Interest.

## Opinion

**PERLUSS, P. J.**—DMS Services, LLC, Diversified Maintenance Services, Inc., DMS Facility Services, LLC, and DMS Facility Services, Inc. (collectively DMS), petitioned this court for a writ of mandate seeking to vacate the trial court's order compelling arbitration of its cause of action for breach of contract and related claims against Zurich Services Corporation (ZSC), the third party administrator for DMS's workers' compensation insurance claims,

and its cause of action for declaratory relief against Zurich American Insurance Company and American Zurich Insurance Company (collectively Zurich Insurance). The court ordered arbitration of each of those claims based on an arbitration clause in DMS's workers' compensation insurance agreements with Zurich Insurance. Even though ZSC was not a signatory of the insurance agreements, the court concluded ZSC could compel arbitration under the doctrine of equitable estoppel. Because DMS is not an agent or alter ego of Zurich Insurance and its claims against ZSC are not founded upon, or inextricably intertwined with, the insurance agreements containing the arbitration provision, the trial court erred in compelling arbitration of the claims against ZSC under equitable estoppel principles. Accordingly, we grant the petition as to DMS's claims against ZSC. Because DMS's declaratory relief claim against Zurich Insurance was included for protective purposes only, we discharge as improvidently granted the order to show cause directed to the order compelling arbitration of that claim.

## FACTUAL AND PROCEDURAL HISTORY

### 1.  DMS's Deductible Agreements with Zurich Insurance

DMS is in the business of providing commercial janitorial services. From 2005 through 2011 DMS annually purchased workers' compensation insurance policies from Zurich Insurance. Those policies did not contain an arbitration clause. However, Zurich Insurance also required DMS to sign annual deductible agreements, which purported to supersede any deductible endorsement to the workers' compensation policies. Those ancillary agreements contained an arbitration provision mandating any dispute arising out of the interpretation, performance or alleged breach of the policy agreement to be settled by binding arbitration in Illinois administered by the American Arbitration Association.

### 2.  DMS's Claims Administration Contract with ZSC

During the same period, that is, from 2005 through 2011, DMS annually contracted with ZSC to act as a third party administrator for workers' compensation claims filed under the Zurich Insurance policies. Among other things, ZSC was responsible for reviewing claims and loss reports; investigating all qualified claims; creating and maintaining claim files; and adjusting, settling or defending claims. None of DMS's agreements with ZSC contained an arbitration clause.

### 3.  Zurich Insurance's Arbitration Demand Seeking Monies Owed Under Policies

In February 2011 Zurich Insurance initiated arbitration proceedings against DMS before the American Arbitration Association (the AAA arbitration)

pursuant to the arbitration provision in its deductible agreements with DMS. Zurich sought more than $3.5 million in payment from DMS for premiums and reimbursement of workers' compensation insurance claim deductibles.

On March 18, 2011 DMS filed a request for action with the Department of Insurance seeking an administrative ruling the deductible agreements, including the arbitration provision contained in them, were invalid because they had not been filed with and approved by the Department of Insurance in accordance with Insurance Code section 11658.[1]

> 4. *DMS's Action Against ZSC for Breach of the Claims Administration Agreement and Against Zurich Insurance for Declaratory Relief*

On March 22, 2011 DMS filed the instant action against ZSC, asserting claims for breach of contract and tortious breach of the implied covenant of good faith and fair dealing. DMS alleged ZSC had breached its obligations as a third party administrator by mishandling claims made against the policies, causing DMS to overpay several claims. Anticipating ZSC's assertion the dispute was subject to the arbitration provision contained in the deductible agreements, DMS's complaint also included a cause of action for declaratory relief against Zurich Insurance seeking a judicial declaration the deductible agreement containing the arbitration provision was invalid because it violated Insurance Code section 11658.[2]

On April 19, 2011 DMS also filed a separate motion to stay the AAA arbitration pursuant to Code of Civil Procedure section 1281.2, subdivision (c), arguing that, in light of its lawsuit against ZSC, there was the "possibility of conflicting rulings on common issues of law and fact."

> 5. *ZSC and Zurich Insurance's Joint Motion to Compel Arbitration*

On May 6, 2011 ZSC and Zurich Insurance filed a joint motion to compel arbitration of the instant action or, in the alternative, to stay it pending the

---

[1] On April 11, 2012, this court denied DMS's request to stay this original proceeding pending the outcome of the administrative hearing because the validity of the arbitration clause is immaterial to the threshold question whether ZSC can compel arbitration under the doctrine of equitable estoppel. (See *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 18 [125 Cal.Rptr.3d 522] [while it "may be true" that a dispute is covered under a "broadly worded" and valid arbitration agreement, "that does not answer the *threshold* question" whether the appellants satisfied their burden to show one or more of them is a party to or can otherwise enforce the arbitration agreement].)

[2] DMS's complaint also asserted a claim of negligence against Sander A. Kessler & Associates, which served as DMS's brokers for its workers' compensation insurance services. That claim was not part of the court's arbitration order and is not at issue in this appeal.

outcome of the AAA arbitration between DMS and Zurich Insurance. ZSC argued arbitration was required under the deductible agreement because the action against it arose out of the interpretation of the insurance agreements, including the deductible agreements containing the arbitration provision. As to their motion to stay the action, ZSC and Zurich Insurance argued DMS's defenses in the arbitration—it only owes Zurich Insurance money because ZSC mishandled and mismanaged its workers' compensation claims—also form the basis for DMS's claims against ZSC in the instant litigation and could substantially affect the outcome of this litigation.

> 6. *The Trial Court's Order Compelling Arbitration and Denying the Motion to Stay the AAA Arbitration Between DMS and Zurich Insurance*

On August 5, 2011 after a full hearing on the motion to compel arbitration or stay the action, the court granted ZSC and Zurich Insurance's motion to compel arbitration. As to ZSC, the court found, although ZSC was not a party to the arbitration provision in the deductible agreements, and DMS was not suing under those agreements, DMS's claims were nonetheless "inextricably intertwined" with the deductible agreements DMS had signed. Accordingly, under the doctrine of equitable estoppel, the court concluded ZSC could compel arbitration under the deductible agreements even though it was not a signatory to those agreements.

As to Zurich Insurance, the trial court found the declaratory relief action to be within the scope of the arbitration agreement and the question whether the deductible agreement as a whole was invalid under Insurance Code section 11658 was for the arbitrator to decide in the first instance.

The trial court denied DMS's motion to stay the AAA arbitration, finding, in light of its arbitration order, there were no grounds to issue the stay under Code of Civil Procedure section 1281.2.

## CONTENTIONS

DMS contends (1) the court erred in finding ZSC could compel arbitration under the doctrine of equitable estoppel; (2) the arbitration agreement is invalid because it was not filed with the Department of Insurance and approved in accordance with Insurance Code section 11658; and (3) the court, not the arbitrator, should determine the validity of the arbitration agreement in the first instance.

## DISCUSSION

### *DMS's Claims Against ZSC*

#### 1. *Standard of Review*

We review the trial court's interpretation of an arbitration agreement de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence. (See *Jones v. Jacobson, supra,* 195 Cal.App.4th at p. 12 [" '[w]hether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of [the] interpretation was introduced in the trial court' "]; *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1235 [123 Cal.Rptr.3d 429] (*JSM*) [same].) Our de novo review includes the legal determination whether and to what extent nonsignatories to an arbitration agreement can enforce the arbitration clause. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708 [111 Cal.Rptr.3d 876] (*Molecular Analytical*) [absent conflicting extrinsic evidence, " '[w]hether and to what extent [nonsignatories] can also enforce the arbitration clause is a question of law, which we review de novo' "].)

#### 2. *Governing Law*

■ There is a strong public policy in favor of arbitration. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [8 Cal.Rptr.3d 517, 82 P.3d 727] [recognizing strong federal and state public policies favoring arbitration]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971–972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Still, "[a]lthough '[t]he law favors contracts for arbitration of disputes between parties' [citation], ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' " (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744 [222 Cal.Rptr. 1, 710 P.2d 833]; accord, *AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 648 [89 L.Ed.2d 648, 106 S.Ct. 1415] [" 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit' "]; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1063 [54 Cal.Rptr.3d 837] [same].)

■ Because arbitration is a matter of contract, generally " 'one must be a party to an arbitration agreement to be bound by it or invoke it.' " (*Molecular Analytical, supra,* 186 Cal.App.4th at p. 706; accord, *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 598 [60 Cal.Rptr.3d 93] ["right to

arbitration depends on a contract, and a party can be compelled to submit a dispute to arbitration only if the party has agreed in writing to do so"].) However, both California and federal courts have recognized limited exceptions to this rule, allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, a dispute arising within the scope of that agreement. (See *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513 [105 Cal.Rptr.3d 585] [describing "six theories by which a nonsignatory may [compel or] be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary' "]; *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 268 [25 Cal.Rptr.3d 440] (*Boucher*) [same, citing federal cases]; see also *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile* (4th Cir. 1988) 863 F.2d 315, 320–321.)[3]

These exceptions to the general rule that one must be a party to an arbitration agreement to invoke it or be bound by it "generally are based on the existence of a relationship between the nonsignatory and the signatory, such as principal and agent or employer and employee, where a sufficient 'identity of interest' exists between them." (*Jones v. Jacobson, supra*, 195 Cal.App.4th at pp. 18–19, fn. 9; accord, *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614–615 [139 Cal.Rptr.3d 114] [allegations in complaint that defendants acted as agents of one another sufficient to allow alleged agent/nonsignatory to compel arbitration]; *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 766 [28 Cal.Rptr.3d 752] [" '[t]he common thread' " in these cases " 'is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement' "]; see, e.g., *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826] [defendants who were sued as agents of corporate defendant, a signatory to arbitration agreement, could invoke the arbitration clause as to claims arising out of arbitration agreement, even though they were not signatories to contract];

---

[3] ZSC and Zurich Insurance insist the deductible agreement containing the arbitration clause is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) as stated in the deductible agreement, while DMS asserts the FAA does not govern this dispute. We need not resolve this question. Even if the FAA applies, the question whether a contract containing an arbitration provision can be enforced by or against nonparties to the contract is governed by state law principles. (See *Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624 [173 L.Ed.2d 832, 129 S.Ct. 1896, 1902–1903] [pursuant to § 2 of FAA, state law governs question whether arbitration contract may be enforced by nonparty to arbitration agreement].) In any event, for purposes of equitable estoppel, California and federal law are identical. (See *Boucher, supra*, 127 Cal.App.4th at p. 271 [use of equitable estoppel by nonsignatory to compel arbitration is evaluated in same manner under both federal and Cal. decisional authority]; see *ibid.* [citing federal authorities]; *Molecular Analytical, supra*, 186 Cal.App.4th at pp. 714–715 [when it comes to doctrine of equitable estoppel in connection with a motion to compel arbitration, there is no discernible difference between Cal. and federal law].)

*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 242 [54 Cal.Rptr.2d 628] [describing third party beneficiary exception].)

■ In allowing ZSC, a nonsignatory to the arbitration agreement, to compel arbitration in the instant case, the trial court relied on the doctrine of equitable estoppel, concluding DMS's claims against ZSC were based on, and "inextricably intertwined" with, the deductible agreements containing the arbitration clause. Under this theory, " 'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.' " (*Molecular Analytical, supra,* 186 Cal.App.4th at p. 706; accord, *Boucher, supra,* 127 Cal.App.4th at p. 268; *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220 [92 Cal.Rptr.3d 534] (*Goldman*); cf. *JSM, supra,* 193 Cal.App.4th at pp. 1240–1241 [doctrine of equitable estoppel may also apply to permit signatory to arbitration agreement to compel nonsignatory to arbitrate].) The reason for this equitable rule is plain: One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract. (See *Jones v. Jacobson, supra,* 195 Cal.App.4th at p. 20 [purpose of equitable estoppel doctrine is to " 'prevent a party from using the terms or obligations of an agreement as the basis for his [or her] claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement' "]; *Boucher,* at p. 272 ["a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved"]; *Molecular Analytical,* at p. 706 [" '[t]he rule applies to prevent parties from trifling with their contractual obligations' "].)

3. *The Trial Court Erred in Compelling Arbitration Under the Doctrine of Equitable Estoppel Because DMS's Claims Against ZSC Are Not Founded in, or Inextricably Intertwined with, the Deductible Agreement Containing the Arbitration Clause*

ZSC contends equitable estoppel was properly applied in this case because DMS's claims against it are inextricably intertwined with the deductible agreements containing the arbitration clause. An examination of the complaint, however, reveals otherwise. (See *Goldman, supra,* 173 Cal.App.4th at pp. 229–230 ["[b]ecause equitable estoppel applies only if plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant, we examine the facts alleged in the complaints"]; *Molecular Analytical, supra,* 186 Cal.App.4th at p. 715 [same].)

DMS's complaint alleges ZSC breached its administrator duties under the claims administration agreement;[4] it does not allege, nor could it against ZSC, a breach of the deductible or policy agreements to which ZSC is not a party. Similarly, it does not rely on any provision in those agreements to support its claims. (See, e.g., *Jones v. Jacobson, supra*, 195 Cal.App.4th at p. 21 ["[o]f the 21 causes of action asserted by the Joneses, only two are based on contract and both of those causes of action are against the Jacobson appellants for breach of the joint venture agreement, which has nothing to do with the account agreement" containing the arbitration clause]; cf. *Boucher, supra*, 127 Cal.App.4th at p. 272 [where employee sued employer and employer's successor under employment contract containing arbitration agreement, successor, a nonsignatory to the agreement, could invoke arbitration clause under doctrine of equitable estoppel]; *Molecular Analytical, supra*, 186 Cal.App.4th at pp. 714–715 [where plaintiff sued defendant and defendant's assignee pursuant to plaintiff's contract with defendant containing arbitration provision, equitable estoppel permitted defendant's assignee, a nonsignatory to the arbitration agreement, to compel arbitration of plaintiff's complaint].) Accordingly, there is no basis to find that the complaint against ZSC for breaching the claims administration agreement is "intimately founded in" the deductible agreement containing the arbitration clause. (See *Goldman, supra*, 173 Cal.App.4th at pp. 213–214 ["The sine qua non for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause. Because the contractual obligations in the operating agreements were unrelated to [the] plaintiff's claims against the nonsignatory accountants and lawyers, there is no basis in equity for preventing [the] plaintiffs from suing the accountants and lawyers in court."].)

In support of its equitable estoppel argument, ZSC contends, as it did successfully in the trial court, the instant case is on all fours with *NS Holdings LLC Inc. v. American Internat. Group Inc.* (C.D.Cal., Nov. 15, 2010,

---

[4] The complaint alleges ZSC breached the claims administration agreement by "mismanaging DMS claims, failing to investigate workers['] compensation claims and overpaying claims made [under the policy] and generally mishandling Plaintiffs' workers' compensation claims; failing to use the pre-negotiated alternative dispute resolution programs or ADR available for claims made under the policies; allowing workers' compensation claimants to treat outside the ADR program and failing to object to such treatment and/or ensuring medical control over such treatment; paying claims and settling liens for medical treatment obtained by claimants outside the ADR; paying and charging excessive amounts for medical bill review; failing to provide adequate legal counsel for purposes of defending [DMS] against the underlying workers' compensation claims; failing to review all claims and loss reports to determine which were qualified claims; failing to adequately investigate claims and losses; failing to create and maintain an adequate claim file which was to be made available to [DMS] for review; failing to furnish [DMS] with adequate claims reports; and failing to provide a claims coordinator for the servicing of the claim services contract."

No. SACV 10-1132 DOC (JEMx)) 2010 U.S.Dist. Lexis 125077 (*NS Holdings*). American International Group, Inc. (AIG), and American International Specialty Lines Insurance Company (AISLIC) had issued a series of insurance policies to NS Holdings. Chartis Claims (Chartis), pursuant to a contract with AISLIC, was AISLIC's claims administrator. AISLIC's contract with NS Holdings included an arbitration provision; AIG's contract with NS Holdings did not. Pursuant to each of the insurance contracts, all claims against the policies were to be submitted to AIG even though the policies themselves were under AISLIC's name.

NS Holdings sued AIG, AISLIC and Chartis for breach of contract and related claims alleging each of the defendants had wrongly denied its insurance claims. The complaint alleged AIG and AISLIC were alter egos of each other. AIG, AISLIC and Chartis jointly moved to compel arbitration pursuant to the arbitration provision in NS Holdings's insurance contracts with AISLIC. The federal district court granted the motion, even though AIG and Chartis had not signed the arbitration agreement. The court explained NS Holdings's claims against AIG and Chartis invoked the provisions of the insurance policies and thus were inextricably intertwined with the agreement to arbitrate contained in those policies. (*NS Holdings, supra*, 2010 U.S.Dist. Lexis 125077 at p. *4.)

Far from supporting ZSC's position, *NS Holdings* reinforces our conclusion the trial court erred in ordering arbitration of DMS's claims against ZSC. ZSC and Chartis occupy very different positions: Chartis was AISLIC's agent; AISLIC had agreed to arbitration. Under well-established principles of equitable estoppel, AISLIC's agent could, along with AISLIC, compel arbitration in connection with claims brought under AISLIC's contract with NS Holdings. (See, e.g., *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc., supra*, 129 Cal.App.4th at p. 762 [agent of a signatory party to arbitration agreement may enforce it under equitable estoppel principles]; *Nguyen v. Tran* (2007) 157 Cal.App.4th 1032, 1036–1037 [68 Cal.Rptr.3d 906] [same].) In contrast, ZSC is not, nor does any party allege it to be, an agent of Zurich Insurance. If anything, ZSC, as DMS's claims administrator, was an agent of DMS; and nothing in the deductible agreement between DMS and Zurich Insurance contemplated the arbitration of a dispute between DMS and one of its own agents.

ZSC also contends DMS's claims are "inextricably intertwined" with the deductible agreements because those agreements give rise to DMS's claims—that is, ZSC's alleged breach of the claims administration contract caused DMS to owe more money to Zurich Insurance under the deductible agreements. This argument confuses the concept of "claims founded in and intertwined with the agreement containing the arbitration clause" with but—for

causation. A standard indemnity claim, for example, does not exist *but for* the precursor action giving rise to it. Nevertheless, in those circumstances, the doctrine of equitable estoppel does not bind nonsignatory indemnitors to an arbitration agreement between the parties to the underlying action when, as here, the indemnity claims are not founded in the contract containing the arbitration provision and there is no preexisting relationship between the defendants on which to base an estoppel. (See, e.g., *County of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra*, 47 Cal.App.4th at p. 243 [in action by pedestrian against county, county transit authority and driver for negligence, and against pedestrian's health care provider for malpractice, pedestrian's agreement with her health care provider to arbitrate malpractice claims did not bind other parties in the negligence action; although it was the accident that ultimately gave rise to her malpractice claim, there was no basis to bind the county and driver, both of whom were nonsignatories to the arbitration agreement between plaintiff and her health care provider]; see generally *Jones v. Jacobson, supra*, 195 Cal.App.4th at p. 18, fn. 9 [nonparties may enforce arbitration agreements when there is a preexisting relationship between the nonsignatory and the signatory, such as employer and employee or principal and agent].)

At oral argument ZSC agreed with this basic analysis but asserted, for the first time, DMS was actually seeking the benefit of the deductible agreement by relying on paragraph M of the agreement, an offset provision that states, "The parties under this Agreement each reserve the right to offset any undisputed balance due from one party to the other under this or any other Agreement entered into between Us [(defined in the agreement as Zurich Insurance)] except as prohibited by law." This argument mischaracterizes DMS's complaint, which does not mention the offset provision (or any other provision of the deductible agreement), nor is that provision identified by DMS in any other document included in the record. Indeed, the offset provision appears to apply only to monies owed by and between DMS and Zurich Insurance and is simply irrelevant to DMS's claims against ZSC.

■ Similarly unpersuasive is ZSC's argument that, because both the AAA arbitration between DMS and Zurich Insurance, on the one hand, and DMS's action against ZSC, on the other hand, may involve interpretation of the deductible or policy agreements, they are necessarily intertwined. The question is not whether the actions are related, but whether the action against a nonsignatory to the arbitration agreement is rooted in the contract containing the arbitration agreement. To be sure, there are common questions of law and fact in both actions, including, perhaps, interpretation of the policy agreements. But commonality of issues is a far cry from claims grounded in, and "inextricably intertwined with," the arbitration agreement. When commonality of issues exists among actions, some arbitrable and some not, Code of Civil Procedure section 1281.2, subdivision (c), vests the trial court with a

variety of options: The court may (1) refuse to enforce the arbitration agreement and order intervention or joinder of all parties in a single court action; (2) order intervention or joinder in the court action as to all or only certain issues; (3) order arbitration among the parties who have agreed to arbitration and stay the pending court action pending the outcome of the arbitration or proceeding; or (4) stay arbitration pending the outcome of the court action. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 389–390 [25 Cal.Rptr.3d 540, 107 P.3d 217] [Code Civ. Proc., § 1281.2, subd. (c), may be applied even when arbitration agreement governed under FAA; FAA does not preempt Cal.'s procedural provisions concerning arbitration absent express contractual language].) Those options do not include permitting a party to compel arbitration when that party has not agreed to it, nor does equity demand such a result.

■ In sum, the trial court erred in compelling DMS to arbitrate its claims with ZSC. In light of our holding, we need not address DMS's alternative claims that ZSC could not compel arbitration because the deductible agreement containing the arbitration agreement is invalid.

### *DMS's Declaratory Relief Claim Against Zurich Insurance*

DMS's complaint also included a cause of action against Zurich Insurance seeking a judicial declaration the deductible agreement containing the arbitration provision is invalid because it violates Insurance Code section 11658. It appears from DMS's writ petition and the materials submitted by the parties in connection with it that this claim was asserted for protective purposes, to be addressed if ZSC were otherwise permitted to compel arbitration by virtue of the arbitration provision in the deductible agreement. While that claim is not mooted by our holding ZSC cannot enforce the agreement to arbitrate, there is no compelling reason for this court to disturb the order to arbitrate that claim, particularly when DMS has since requested this court to stay resolution of the validity of the arbitration agreement pending the outcome of the administrative proceeding, noted above (see fn. 1, *ante*). Accordingly, as to the trial court's order compelling arbitration of DMS's claim against Zurich Insurance, we discharge the order to show cause as having been improvidently granted and, in a separate order, summarily deny the petition.

## DISPOSITION

The petition is granted in part. Let a peremptory writ of mandate issue directing respondent Los Angeles Superior Court to vacate the portion of its August 5, 2011 order granting ZSC's motion to compel arbitration and enter a new order denying that motion as to ZSC and to conduct further proceedings not inconsistent with this opinion. The order to show cause directed to

the court's August 5, 2011 order compelling arbitration of the declaratory relief action against Zurich Insurance is discharged as improvidently granted. Petitioners are to recover their costs in this writ proceeding.

Woods, J., and Jackson, J., concurred.