Filed 11/14/25  Hume Street Management etc. v. Beverly Hills Acquisition CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HUME STREET MANAGEMENT CONSULTANTS, LIMITED,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>BEVERLY HILLS ACQUISITION LLC,<br><br>        Defendant and Appellant. | B329336<br><br>(Los Angeles County Super. Ct. No. 22SMCV02646) |

APPEAL from an order of the Superior Court of Los Angeles County.  Edward B. Moreton, Jr., Judge.  Affirmed.

Latham & Watkins, Marvin S. Putnam and Jessica Stebbins Bina for Defendant and Appellant.

Munger, Tolles & Olson, Brad D. Brian, Laura D. Smolowe, Craig Jennings Lavoie and Rachel G. Miller-Ziegler for Plaintiff and Respondent.

_____

Beverly Hills Acquisition LLC (BHA) appeals the denial of its motion to compel Hume Street Management Consultants Limited (Hume) to arbitrate its claims against BHA.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Hume alleges it is owed millions of dollars in fees for services it provided at The Maybourne Beverly Hills, a hotel owned by BHA.  According to Hume's complaint, over the course of two years it managed the hotel's day-to-day operations, rebranded it, navigated local government planning and permitting requirements for its redevelopment, and designed and oversaw that redevelopment, but was not compensated for this work.  Hume sued BHA and others, asserting claims for breach of contract, account stated, quantum meruit, promissory estoppel, and unjust enrichment.

BHA moved to compel arbitration of the dispute based on an arbitration provision included in a December 10, 2020 Hotel Management Agreement (Agreement) between BHA and Maybourne Hotels, Limited (MHL), which established MHL as the managing entity for the hotel.  Hume was not a party to the contract.  Neither Hume nor its principal, Patrick McKillen, signed the Agreement.  However, the director of MHL who signed the Agreement on MHL's behalf, Liam Cunningham, was also a director of Hume at the time the Agreement was signed.

BHA contended that even though Hume was not a party to the Agreement, it should be bound by the Agreement's arbitration provision because the provision stated that all claims related to the management and development of the hotel are subject to arbitration.  BHA argued that because Cunningham signed the Agreement while he was a director of Hume in addition to MHL, and because McKillen "was intimately involved

with MHL at the time" and was appointed a director of MHL the following year, Hume was equitably estopped from denying that the Agreement's arbitration provision required its claims to be arbitrated.

The trial court denied the motion to compel arbitration, finding that because Hume was not a signatory to the Agreement and was not attempting to recover damages under the Agreement, it could not be bound by the Agreement's arbitration clause.  BHA appealed.

## DISCUSSION

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492.)  Because arbitration is a matter of contract, "[t]he general rule is that one must be a party to an arbitration agreement either to be bound by or to invoke it." (*Ford Motor Warranty Cases* (2025) 17 Cal.5th 1122, 1128 (*Ford*).)  There is, however, no policy compelling parties to accept arbitration of controversies they have not agreed to arbitrate.  (*Ibid.*; *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.)

" 'Given that arbitration agreements are simply contracts, " '[t]he first principle that underscores all of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.' " [Citations.]  Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." [Citation.]  Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?' " (*Ford, supra*, 17 Cal.5th at p. 1129, quoting *Coinbase, Inc. v. Suski* (2024) 602 U.S. 143, 148.)  Here, as in *Ford*, the answer is nothing.  Hume and BHA did not agree to arbitrate any dispute

3

between themselves: there is no written contract between these two parties.  The arbitration clause on which BHA seeks to rely here is included in the Agreement between BHA and MHL to which Hume was not a signatory.

"[B]oth California and federal courts have recognized limited exceptions to [the general rule that one must be a party to an arbitration agreement to be bound by or to invoke it], allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, a dispute arising within the scope of that agreement."  (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1353 (*DMS*).)  The exception at issue here, equitable estoppel, arises when a party's claims are " ' "intimately founded in and intertwined with" ' a contractual provision."  (*Ford, supra*, 17 Cal.5th at p. 1126.)

The requirement that claims be intimately founded in and intertwined with a contractual provision before a nonsignatory may be bound to arbitrate a dispute "comports with, and indeed derives from, the very purposes of the [equitable estoppel] doctrine."  (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 221.)  Equitable estoppel "rests on a fairness rationale" (*Ford, supra*, 17 Cal.5th at p. 1133), and is intended to prevent the unfair situation in which party tries to have it both ways: "to vindicate contractual provisions beneficial to them yet avoid an agreement to arbitrate."  (*Ibid*; see also *DMS, supra*, 205 Cal.App.4th at p. 1354 ["The reason for this equitable rule is plain: One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract"].)

4

Therefore, "[w]hen [a nonsignatory] plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239–1240.) In *Ford*, which presented the inverse of *JSM Tuscany* with a nonsignatory defendant attempting to compel arbitration based on the arbitration provision in a contract between the plaintiffs and a third party, the California Supreme Court stated that " 'unless a party to an arbitration agreement has used the substantive terms of that agreement as the foundation for his claims against a nonsignatory, there is no reason in equity why he should be forced to arbitrate his claims against the nonsignatory.' " (*Ford*, *supra*, 17 Cal.5th at p. 1137.)

In *Ford*, the California Supreme Court considered when claims are intimately founded in and intertwined with contractual terms so as to warrant the application of equitable estoppel. There, the court declined to apply equitable estoppel to compel arbitration because the plaintiffs' claims did not flow from the contract with the arbitration provision and therefore were not intimately founded in or intertwined in that contract. (*Ford*, *supra*, 17 Cal.5th at p. 1126.) The *Ford* court emphasized that the plaintiffs' "causes of action against Ford do not depend on or invoke any of the terms of the sales agreements with the dealers, nor can they be construed to seek any benefit from those sales contracts." (*Id*. at p. 1133.) Unlike the primary cases applying equitable estoppel, in which the "essential disputes . . . involved allegations that the defendants themselves were liable for a breach of contract terms," the obligations at issue in *Ford* were

5

not derived from the contracts with the arbitration provisions. (*Id*. at pp. 1135–1136.) It was not enough that the parties' dispute presupposed the existence of the contract or referred to it—the " 'substantive terms of that agreement' " had to be " 'the foundation for [the] claims.' " (*Id*. at p. 1137.) In *Ford*, the court concluded, "[P]laintiffs' claims flow not from the contracts but from separate statutory requirements and conventional fraud theories. They are not intimately founded in and intertwined with the contractual terms." (*Id*. at p. 1138.)

Here BHA contends Hume's claims are inextricably intertwined with the Agreement because the duties Hume claims to have performed pursuant to its oral and implied in fact contract with BHA "overlap" the duties assigned to MHL in the Agreement. BHA also dubiously contends that the Agreement's integration clause will have to be interpreted in the course of this dispute.

We do not agree with BHA's contentions. Hume's claims are not founded on an allegation that the Agreement between BHA and MHL was breached. Rather, they are based on BHA's alleged breach of its contract with Hume: Hume's complaint alleges claims based on its separate and preexisting oral and implied in fact agreement with BHA providing that it would manage and redevelop the hotel in exchange for compensation. Just as in *Ford*, the claims made by Hume here do not seek to "enforce any contractual term [in the contract containing the arbitration provision]. Indeed, plaintiffs' claims would be the same even if there were no . . . contract." (*Ford*, *supra*, 17 Cal.5th at p. 1136.) Therefore, Hume "did not make use of a contract provision while attempting to avoid their own obligation in the same contract upon which they rely." (*Id*. at p. 1138.) In the

6

absence of claims based on the Agreement between BHA and MHL, the fundamental rationale of the equitable estoppel doctrine does not apply here, and there is no equitable reason to subject Hume to an arbitration clause to which it did not agree, in a contract to which it was not a party.

Detailing a number of prior contracts that included arbitration provisions, BHA argues the "long-lasting and preexisting business relationship between Hume Street, its principals (McKillen and Cunningham), MHL, Beverly Hills Acquisition, the other defendants, and parties affiliated with the defendants," and in particular the relationship between MHL and Hume, warrants the application of equitable estoppel here. The kind of relationship that merits extending an arbitration clause to a nonsignatory asserting claims founded on that contract is one that "generally gives the party to the agreement authority to bind the nonsignatory. Examples of the preexisting relationship include agency, spousal relationship, parent-child relationship and the relationship of a general partner to a limited partnership." (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1070 (*Crowley*).) In *Ford*, the Supreme Court gave other examples: a nonsignatory company seeking to enforce an arbitration agreement entered into by its subsidiary (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1717); a party explicitly authorized as a subcontractor in the agreement with the arbitration clause and whose subcontract incorporated that contract (*Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 833–834); and plaintiff employees assigned to nonsignatory employers by employers that had agreed to arbitrate (*Boucher v. Alliance Title Co., Inc.* (2005)

7

127 Cal.App.4th 262, 271–273; *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 787–788). (*Ford, supra*, 17 Cal.5th at p. 1137.)

No equivalent relationship exists here. BHA has neither shown that MHL had the authority to bind Hume nor that an agency relationship existed between them. Hume is not alleged to be the parent or subsidiary of MHL. The Agreement does not mention Hume, let alone authorize it as a subcontractor, and Hume is not alleged to be a successor of either party, a third-party beneficiary, or to have been assigned any obligations or benefits by the contract. The connections identified by BHA— prior business dealings involving contracts with arbitration provisions; Cunningham's status as a director of both MHL and Hume at the time he signed the Agreement on behalf of MHL; McKillen's later service as a director of MHL; and the assertion that the Agreement is "identical" to other contracts Cunningham signed while acting in his role as a director of Hume—none of these establish that MHL had any authority to bind Hume to contract provisions or demonstrate the kind of preexisting relationship that *Crowley* and *Ford* describe.

Moreover, Cunningham signed various contracts two times, once for Hume and once for another entity, indicating the parties' understanding that an individual signs a contract on behalf of specific, identified organizations rather than binding all organizations with which the signer is affiliated with a single signature.

Therefore, on our independent review (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680), we conclude that equitable estoppel does not apply here, and the trial court did not err when it denied the petition to compel arbitration.

8

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                    STRATTON, P. J.

We concur:



        WILEY, J.



        RUBIN, J.*

---

\*      Retired Presiding Justice of the California Court of Appeal, Second District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.